MONROE, J.
Plaintiff appeals from a judgment awarding him $450 as a commission for finding a purchaser for certain timbered lands under an alleged contract with defendant; the amount claimed in the petition being $3,000.
It appears from the evidence that on July 29, 1908, defendant wrote a letter to plaintiff offering him a commission of 5 per cent. if. he would make a sale of certain lands on the west side of Bogue Chitto river, informing him that there were others at work, but that his buyer would get the land if he came first. Plaintiff, who lives at Kentwood, in Tangipahoa parish, accordingly took a prospective purchaser named Sanford to call on defendant, at his office in Franklinton, parish of Washington, but was informed on his arrival that defendant had given an option on the land concerning which he had written' to the Lambert Realty Company. It developed, however, that defendant, who makes a business of buying and selling lands for himself and others, had some thousands of acres for sale on the east side of the river, which he then and there employed plaintiff to sell for him, and for which plaintiff secured purchasers, being the same parties, Sanford and his friends, whose interest he had already enlisted. The contract thus made was not put in writing, and, by reason of the circumstances under which it was brought about, was not stated in as definite language as defendant’s written offer of July 29th, but it was, nevertheless, as we think, as clearly understood. Plaintiff says in his testimony:
“I came out here, and he [Sheridan] told me he had given Mr. Lampton an option on this land [on the west side of the river], and he substituted this piece on the east side of the river. Mr. Sheridan and I walked out on the gallery, and left Mr. Sanford in the room, and he asked me if this other tract would be satisfactory, and I told him that it would.”
The lands on the east side of the river consisted of different tracts in which defendant was differently interested. Part of them belonged to Dr. F. M. Sheppard, of Mississippi, and defendant was to get, as his compensation for selling it, one-half the net profit (after deducting the cost and interest, etc.). Part of them belonged to Rupp & Holland, and defendant was to get a commission for selling it, and part of them were lands which defendant himself claimed to own by virtue of a tax title. The sale to Sanford and his friends appears to have been consummated in New Orleans, and Sanford insisted that Daniel had agreed to allow him one-fourth of his (Daniel’s) commission,. and, upon Sheridan’s demurring, he' obtained an order from Daniel, upon Sheridan, for the payment of one-fourth of said commission, “of 5 per cent,” the amount not being specified in the order because Daniel did not then know (and neither he nor any one else, save the parties themselves, has ever since then found out definitely) the price paid for the lands; it being conceded that it is not correctly stated in the deeds, and Sheridan, whilst testifying in the .case, professing to have forgotten how much he received for his part. It was, however, admitted by Sheridan that he paid Sanford $980 upon the order in question, and, as *91 both he and Sanford knew the amount upon which the 5 per cent, was to be calculated, we take it ($980 being one-fourth of 5 per cent, thereof) that that amount must have been at least $78,400. Sheridan was, nevertheless, indisposed to settle with plaintiff on that basis, and, whilst he appears to have told Dr. Sheppard and Rupp that plaintiff was making the claim, and whilst they left in his hands the money with which to settle the claim, he delayed the settlement, and in July, 1910, plaintiff and one of the counsel who now represent him called on him at his office in order to bring it about, and plaintiff gives the following account of the interview:
“We walked in and spoke to Mr. Sheridan. I talked a little, and I told my business — that I had come to settle our affairs. He says: T have $1,000 left with me by Rupp and Holland, which I have authority to turn over, and I have $2,000 left by Dr. Sheppard, which he advised me to hold; and, if you’ll get an order from Dr. Sheppard, I’ll settle;’ and says, ‘Is that satisfactory?’ and I says ‘Yes;’ and I come to the bank and got Mr. Goodbee the money, and sent him over to Dr. Sheppard’s, at Rich-ton, Miss., and he came back with an order for $2,000 on Mr. Sheridan. Any way, Mr. Good-bee sent me the order, and I wrote to Mr. Sheridan about it, and he refused to pay it, and I took it up with my attorney, Mr. Reid, and he advised me to bring suit.”
The testimony thus given is fully corroborated in its essential particulars by Mr. Goodbee; and the order given by Dr. Sheppard, which is made part of the evidence, reads as follows:
“Richton, Miss., July 8, 1910.
“Mr. D. E. Sheridan, Franklinton, La.
“Dear Sir: Please pay to Mr. W. J. Daniel $2,000, with interest, this being the amount I left in your hands, Oct. 10th, 190S, and which was to be used to pay Mr. W. J. Daniel’s commission for his assistance in the sale of certain lands and timber in Washington parish, La. Said lands and timber being property in which I, then, had an interest.
“Very truly yours,
“[Signed] E. M. Sheppard.”
At one time in the course of his examination as a witness defendant was asked, “Did you agree to pay him [plaintiff] a commission?” to which he replied: “Not a cent on that land. I did on the lands of the Standard Land Company” (referring, no doubt, to the lands on the west side of the river). At another time he testifies that he had m> other agreement with plaintiff than that he would pay him “something” for his services. At still another time he testifies that he told plaintiff that, if he sold the lands for a price that would represent $4 per M. for the timber, he would “pay him his commission on it.” He further testifies, in general terms, that the payment of the amount claimed by plaintiff would leave no profit for him in the transaction, but there is so much that he fails to tell that we do not find that proposition to have been established; nor should we consider it material, if established, since whether he was to make a profit was a matter for him to consider before he engaged the services of the plaintiff and before those services were rendered. Plaintiff in his petition claims $3,000, but in the course of his testimony he says that he thinks the amount due is $2,7S0. We are satisfied that it is at least that much, and are inclined to think that it is somewhat more, but will be governed by his view of the matter.
It is therefore ordered, adjudged, and decreed that the' judgment appealed from be amended by increasing the amount awarded plaintiff to $2,780, and, as thus amended, affirmed.